# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00498-CV

### Bastrop Central Appraisal District, Appellant

### v.

### Acme Brick Company, Appellee

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 423RD JUDICIAL DISTRICT NO. 423-072, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

### O P I N I O N

Bastrop Central Appraisal District appeals from the trial court's summary judgment ordering that Acme Brick Company's property is entitled to a pollution-control exemption under Section 11.31 of the Texas Tax Code for tax years 2004 through 2007. *See* Tex. Tax Code § 11.31; *see generally id.* §§ 1.01-43.04 (Property Tax Code). In 2004, the District granted the exemption, which need not be claimed annually once granted, but removed the exemption in 2007 when it discovered that it did not have a required application form in its files. Acme contends that it was entitled to the exemption in tax years 2004 through 2007 because it and the District entered into a final agreement under Section 1.111(e) of the Tax Code that prevented the District from later removing the exemption. Because we agree that the parties' agreement was final and binding on the District, we will affirm the trial court's order granting summary judgment in Acme's favor.

**BACKGROUND**

This dispute concerns certain real and personal property in Elgin, Bastrop County, Texas, that Acme owns and uses to manufacture brick (the "Elgin facility"). Acme installed pollution-control equipment (the "Property") at the Elgin facility before 2004, and it sought a tax exemption from the District for the Property under Section 11.31 of the Texas Tax Code. *See id.* § 11.31 (establishing tax exemption for property used to control pollution).

Section 11.31 requires a person applying for a pollution-control exemption to present a permit application or a permit exemption request to the executive director of the Texas Commission on Environmental Quality detailing certain information about the property for which the pollution-control exemption is sought.[1] *Id.* § 11.31(c). After the information is submitted, the TCEQ's executive director determines whether the property is used wholly or partly to control pollution and is required to send notice to the chief appraiser of the appraisal district for the county in which the property is located that the person has applied for a pollution-control determination. *Id.* § 11.31(d). After determining whether the property is used to control pollution, the executive director is required to issue a letter to the person seeking the determination and a copy to the chief appraiser stating the executive director's determination. *Id.* Under Section 11.31(i), the chief appraiser of an appraisal district "shall accept a final determination by the executive director [of the TCEQ] as conclusive evidence" that the property is used as pollution-control property. *Id.* § 11.31(i).

---

[1] At the time Acme sought its tax exemption, the Texas Natural Resource Conservation Commission made the determination of whether property was used to control pollution. We cite to the current versions of the statutes for convenience, except where noted, because there have been no intervening amendments that are material to our disposition of this appeal.

It is undisputed that the TCEQ issued positive use determinations for the Property in 2004, meaning that the TCEQ determined that the Property is used as pollution-control property. *See id.* § 11.31(d). It is also undisputed that the District granted Acme a pollution-control exemption on the Property for tax years 2004 through 2007. *See id.* § 11.43(c) (establishing that exemption provided by Section 11.31, once allowed, need not be claimed in subsequent years and applies to property until it changes ownership or person's qualification for exemption changes). Although Section 11.43(c) also establishes that "the chief appraiser may require a person allowed one of the exemptions in a prior year to file a new application to confirm the person's current qualification for the exemption by delivering a written notice that a new application is required, accompanied by an appropriate application form, to the person previously allowed the exemption," the District did not ask Acme to file a new application in tax years 2005 through 2007. *Id.*

Acme used the firm of Burr Wolff as its property-tax consultant and agent during tax years 2004 through 2006. One of Acme's employees, Brent Mudie, worked with one of Burr Wolff's employees, David Porter, to obtain the exemption on the Property by filing the permit exemption requests required by Section 11.31 with the TCEQ. Acme contends that Burr Wolff also filed the application form for the pollution-control exemption with the District, along with copies of the positive use determinations issued by the TCEQ. *See id.* § 11.43(a) (requiring person claiming exemption to apply for exemption by filing exemption application form with chief appraiser for each appraisal district in which property is located). After Acme filed for the exemption, but before the District had granted it, Burr Wolff also filed a notice of protest in 2004 on Acme's behalf with the

3

Appraisal Review Board for Bastrop County. The notice of protest included the Property and other pieces of property at the Elgin facility.[2]

Porter attested that he discussed Acme's application for the pollution-control exemption with the District's agent, the Capitol Appraisal Group (Capitol), a contract appraisal firm that represented the District on commercial accounts, including Acme's. Porter further attested that at no time during his discussions with Capitol did anyone mention that Acme had failed to file the required form. Capitol and Acme ultimately reached an agreement on the value of the property under protest. As part of that agreement, Capitol and Acme agreed that the Property was exempt as pollution-control property under Tax Code Section 11.31 and Acme agreed to withdraw its protest.

On November 26, 2007, however, the District notified Acme that it was removing the exemption for the 2004, 2005, 2006, and 2007 tax years because it did not have the required exemption application form in its records. *See id.* § 11.43(a) (requiring claimant to apply for exemption by filing exemption application form with chief appraiser), (i) ("If the chief appraiser discovers that an exemption that is not required to be claimed annually has been erroneously allowed in any one of the five preceding years, the chief appraiser shall add the property or appraised value

---

[2] The factual background included in this section is taken from the admitted summary-judgment evidence. We recognize that the District reurges some of its objections to Mudie's and Porter's affidavits on appeal, primarily arguing that neither Mudie nor Porter adequately demonstrated personal knowledge that an exemption application form was actually filed with the District; that Mudie's affidavit does not meet the requirements for an interested-witness affidavit because he does not explain why Acme has copies of the TCEQ applications for use determinations, but not the missing exemption application form; and that Porter's statements about the contents of Burr Wolff's client files violate the best-evidence rule because the file was not produced. Accordingly, we rely on the affidavits only for those facts not disputed by the District, and where necessary, note those facts that remain in dispute. The disputed facts are ultimately irrelevant to our resolution of this appeal.

that was erroneously exempted for each year to the appraisal roll as provided by Section 25.21 of this code for other property that escapes taxation."). Acme did not maintain a copy of the application form in its files. Although Porter attested that a copy had been maintained by Burr Wolff in its client files, Burr Wolff had filed for bankruptcy in December 2006, and its client files were turned over to the bankruptcy trustee. Acme was unable to obtain a copy of its files from the bankruptcy trustee.

Acme filed a notice of protest with the Appraisal Review Board challenging the District's removal of the exemption. The Board issued an order denying Acme's protest and determining that "[t]he subject property did not qualify for the exemption of which application was made, and the appraisal records should not be changed." Acme filed suit in district court under Chapter 42 of the Property Tax Code appealing the Board's order on Acme's protest. *See id.* § 42.01(a)(1)(A). Acme also sought declaratory relief to determine its rights under the Code to the tax exemption on the pollution-control properties for the tax years 2004 through 2007.[3]

Acme moved for summary judgment, arguing that (1) the undisputed summary-judgment evidence showed that the Property qualified for the pollution-control exemption in the tax years 2004 through 2007; (2) it and the District had reached a final agreement under Section 1.111(e) of the Tax Code that the Property qualified for the pollution-control exemption; and (3) alternatively,

---

[3] Although Section 42.09 provides that the procedures prescribed by the Property Tax Code are the exclusive remedies for adjudication of the grounds of protest authorized by the Property Tax Code, Section 42.09 does not preclude Acme from seeking alternative relief to determine the construction and validity of the Section 1.111(e) agreement and a declaration of its rights under the agreement and the Property Tax Code, given the statutory limitation on an appraisal review board's power to review or reject an agreement between a property owner or the owner's agent and the chief appraiser under Section 1.111(e). *See* Tex. Tax Code §§ 41.01(b) ("The board may not review or reject an agreement . . . under Section 1.111(e)."); 41.41(a) (right of protest); 42.09.

5

Acme was entitled to the exemption for tax years 2005, 2006, and 2007 because the District did not provide it with written notification that it needed to reapply for the exemption until after it granted the 2007 exemption. The District responded that (1) Acme did not file an application with it and thus was not entitled to the exemption; (2) it had not reached a Section 1.111(e) agreement with Acme that the pollution-control exemptions for tax years 2004 through 2007 were not erroneously allowed; moreover, those exemptions were not matters that Acme could have protested in those years, as required to be the proper subject of a Section 1.111(e) agreement, because the District allowed the exemptions; and (3) because the District is not allowing the exemption for tax year 2004, Acme cannot rely on Section 11.43(c) as an excuse for not filing applications for tax years 2005, 2006, or 2007. The District also objected to Mudie's and Porter's affidavits. Acme filed a reply and an objection to the affidavit of the chief appraiser that the District submitted as summary-judgment evidence. The district court considered all the evidence submitted by both parties and granted Acme's motion. This appeal followed.

## ANALYSIS

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a grant of a traditional summary-judgment motion, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.* Summary judgment is proper when the evidence shows that there are no genuine disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When the trial court does

not specify the basis for its summary judgment, as in this case, we must affirm the judgment if any one of the movant's theories has merit. *Star-Telegram v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

On appeal, the District challenges the three grounds upon which Acme based its summary-judgment motion. As one ground for summary judgment, Acme argued that it reached agreement with the District in 2004 that the Property was entitled to the pollution-control exemption, and consequently, Tax Code Section 1.111(e) deprives the District of authority to rescind the appraisal agreement by removing the exemption. Section 1.111(e) provides that:

> An agreement between a property owner or the owner's agent and the chief appraiser is final if the agreement relates to a matter:
>
> > (1) which may be protested to the appraisal review board or on which a protest has been filed but not determined by the board . . . .

Tex. Tax Code § 1.111(e)(1). The dispositive legal issue in this case is whether Acme and the District reached an agreement in 2004 about the pollution-control exemption that constituted a final, binding agreement under Section 1.111(e), thereby precluding the District from removing the exemption in 2007 for tax years 2004 through 2007.

We first consider whether the District's grant of the exemption in 2004 is an agreement as contemplated by Section 1.111(e).[4] Acme submitted as summary-judgment evidence a document from Capitol to Burr Wolff that lists the values of certain Acme properties, including

---

[4] We recognize that the District does not deny that it reached an agreement with Acme to grant the exemption in 2004 or that the agreement constitutes a Section 1.111(e) agreement between the parties. Nevertheless, we analyze whether the parties' agreement satisfies Section 1.111(e)'s requirements because understanding how the statutory provision works informs our analysis of the points raised by the parties in their summary-judgment filings and on appeal.

7

the Property, and notes that the pollution-control exemption is being applied to the Property. The document states that it is an "acknowledgment of new value for ad valorem taxation" and further that "the above listed new values are recommended by the appraiser for the District and accepted by the agent/owner for the taxpayer as 2004 values. *The agent/owner hereby withdraws protest* and waives the right to further notification of values." (Emphasis altered.) It is signed by both a Capitol representative and an Acme representative. The document plainly reflects an agreement between the District and Acme about the value of Acme's property, including the application of the pollution-control exemption to the Property. *See Sondock v. Harris Cnty. Appraisal Dist.*, 231 S.W.3d 65, 69 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (using ordinary meaning of term "agreement" when construing Section 1.111(e)); *see also City of Austin v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002) (when construing statutes, courts generally use ordinary meaning of words, unless given specific statutory definition).

A property owner is entitled to protest a denial in whole or in part of a partial exemption, as well as any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner. Tex. Tax Code § 41.41(a)(4), (9). Had the District decided to deny the exemption, Acme could have protested the matter to the Appraisal Review Board. Acme contends that its notice of protest included the Property. The document signed by Capitol and Acme specifically states that the property values (including the application of the exemption) have been agreed upon by the District's representative and Acme, and as a result, Acme is withdrawing its protest. Thus, the District's grant of the pollution-control exemption fits the statutory requirement of a matter that may be or has been protested, but that has

not yet been determined by the board. *See Hartman v. Harris Cnty. Appraisal Dist.*, 251 S.W.3d 595, 599 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (explaining that Section 1.111(e)(1)'s two clauses provide a continuum beginning before any protest is filed and lasting through filing process up to point that board makes determination). Given that the agreement concerns a statutorily defined matter, the parties' agreement to the Property value based on the granted exemption is final under Section 1.111(e)(1) and became final at the moment it was reached.[5] *See Sondock*, 231 S.W.3d at 69.

In the context of taxpayer challenges to Section 1.111(e) agreements, courts have held that the finality of those agreements renders irrelevant any subsequent determinations by the appraisal review board about property value. *E.g.*, *Bullseye PS III LP v. Harris Cnty. Appraisal Dist.*, 365 S.W.3d 427, 435 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Sondock*, 231 S.W.3d at 69. The agreements become final without approval or adoption by the appraisal review board. *MHCB (USA) Leasing & Fin. Corp. v. Galveston Cent. Appraisal Dist.*, 249 S.W.3d 68, 83 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Furthermore, Section 1.111(e) agreements are "not subject to protest by the property owner or subject to a property owner's statutory suit for judicial review under [C]hapter 42." *Id.* at 84.

---

[5] We note that when a Section 1.111(e) appraisal agreement has been made about an exemption that need not be claimed in subsequent years, unless the parties have agreed otherwise, the exemption would remain governed by Section 11.43(c), which only allows the exemption to apply to the property until it changes ownership or the person's qualification for the exemption changes. *See id.* § 11.43(c). In addition, unless the parties have agreed otherwise, the chief appraiser would also remain able to require a person previously allowed an agreed exemption to file a new application to confirm the person's current qualification for the exemption. *See id.*

We next consider whether the District is statutorily bound—as courts have determined that a taxpayer is—to abide by a Section 1.111(e) appraisal agreement. We look first to the plain language of Section 1.111(e), which does not limit the finality of the agreement in any way. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (explaining that our primary objective when construing statutes is to give effect to the Legislature's intent, "which, when possible, we discern from the plain meaning of the words chosen"); *see also TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (noting presumption that Legislature chooses statute's language with care and words not included have been purposefully omitted). Nothing in the text of Section 1.111(e) indicates that only the taxpayer should be bound by an agreement's terms or that the appraisal district may escape the effect of an agreement's finality based on other provisions of the Property Tax Code.

Nevertheless, the District contends that it is entitled to remove the exemption. The District does not dispute that it reached an agreement with Acme that Acme's Property qualified for the pollution-control exemption in the tax years 2004 through 2007 or that the agreement constitutes a Section 1.111(e) agreement between the parties on the value of the Property. Instead, it raises two arguments in opposition to Acme's statutory interpretation that the 2004 agreement prevents the District from removing the exemption.

First, the District contends that no *applicable* Section 1.111(e) agreement governs its decision to remove the pollution-control exemption. The District argues that because the chief appraiser's decision to grant or deny an exemption is a separate action from his decision to remove an erroneously allowed exemption, the key legal issue is whether a valid agreement exists between

it and Acme about the chief appraiser's decision to remove the exemption, not whether there is a valid agreement about allowing the exemption. We disagree. The dispositive legal issue in this case is whether the parties entered into a Section 1.111(e) appraisal agreement when Capitol and Acme agreed upon appraisal values for Acme's property for tax year 2004, including the application of the pollution-control exemption, which precluded the District from later removing the exemption. The District's argument that there is no evidence of a later agreement between the parties about its decision to remove the exemption evades the central question of whether the 2004 agreement to apply the exemption was final and binding on the District. Whether a valid agreement later existed to remove the exemption is irrelevant to that question, especially since no one contends that Acme agreed with the District that the exemption should be removed.

Second, the District argues that reading Section 1.111(e) to prevent it from removing an exemption that it later decides it erroneously allowed would render meaningless Tax Code Sections 11.43 (h) and (i). These Sections require the chief appraiser to investigate if he learns of any reason that a previously allowed exemption should be cancelled and to cancel the exemption if he determines the property should not be exempt. *See* Tex. Tax Code § 11.43(h) (requiring investigation and cancellation if chief appraiser determines property should not be exempt), (i) (requiring chief appraiser to add property or appraised value that was erroneously exempted for each year to appraisal roll if he discovers that exemption that is not required to be claimed annually has been erroneously allowed in any one of five preceding years). The District asserts that every time it allows an exemption, it can be considered to have reached a Section 1.111(e) appraisal agreement with a

11

taxpayer. Thus, it reasons, if Section 1.111(e) applies to it, it would never be allowed to remove an erroneously granted exemption as required by Sections 11.43(h) and (i).

The District's interpretation of Section 1.111(e) violates fundamental tenets of statutory construction. We must presume that the Legislature intends an entire statute to be effective and that a just and reasonable result is intended. Tex. Gov't Code § 311.021(2), (3); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). We must always consider statutory provisions in the context of the act as a whole, rather than examining provisions in isolation. *TGS-NOPEC*, 340 S.W.3d at 439. When provisions of the same statute may be in conflict, we must construe the statute in a manner that harmonizes all of its various provisions. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex. 2002). We should not give one provision a meaning that conflicts with other provisions, even though it might be susceptible to such a construction standing alone. *See Texas Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex. 2002); *Clint Indep. Sch. Dist. v. Cash Invs., Inc.,* 970 S.W.2d 535, 539 (Tex. 1998).

Applying these principles, we hold that Section 1.111(e)'s directive that "an agreement between a property owner or the owner's agent and the chief appraiser is final" means that the appraisal district may not take subsequent action that is contrary to that agreement, even in situations in which the Property Tax Code would otherwise allow it to reconsider a previous decision.[6] When we consider the appraisal process as a whole, it is apparent that Section 1.111(e) governs situations involving the resolution of disagreements between an appraisal district and a

---

[6] We do not mean to imply that a party might not be able to challenge an agreement's validity in some situations (e.g., fraud on the part of either party); we conclude only that a valid agreement precludes both parties from later reconsideration of the agreement.

taxpayer occurring at some point during the process, not situations in which the taxpayer applies for and is granted an exemption with no dispute or negotiation between it and the appraisal district.[7] Approval of an exemption standing alone does not mean the district and the taxpayer have entered into an "agreement" in the sense contemplated by Section 1.111(e), absent some dispute between the parties subsequent to the taxpayer's filing of an application.[8]

The appraisal review board is explicitly tasked with determining protests initiated by property owners as well as determining whether an exemption or partial exemption is improperly granted, *see id.* § 41.01(a)(1), (5), but it is also explicitly prohibited from "review[ing] or reject[ing]

---

[7] Section 11.45 sets forth the procedure to be followed by the chief appraiser when considering tax-exemption applications:

(a)  The chief appraiser shall determine separately each applicant's right to an exemption.  After considering the application and all relevant information, the chief appraiser shall, as the law and facts warrant:

(1)  approve the application and allow the exemption;

(2)  modify the exemption applied for and allow the exemption as modified;

(3)  disapprove the application and request additional information from the applicant in support of the claim; or

(4)  deny the application.

*Id.* § 11.45(a).  Section 11.45 also establishes a process by which the chief appraiser may request additional information from an exemption applicant.  *Id.* § 11.45(b).  If the applicant's exemption is denied or modified, the applicant may protest the appraisal district's action before the appraisal district review board.  *Id.* §§ 11.45(d) (requiring chief appraiser to include brief explanation of protest procedures with written notice of modified or denied exemption), 41.41(a)(4).

[8] This interpretation of the word "agreement" also comports with the ordinary meaning of the word.  To "agree suggests an accord, harmony, or compatibility arrived at by a settling of differences . . . ."  Webster's Third New Int'l Dictionary 43 (2002).

13

an agreement between a property owner or the owner's agent and the chief appraiser under Section 1.111(e)," *id.* § 41.01(b). Before 1993, the appraisal review board was required to approve of Section 1.111(e) agreements before they became final. *See* Act of May 28, 1989, 71st Leg., R.S., ch. 796, § 2, 1989 Tex. Gen. Laws 3591, *amended by* Act of May 26, 1993, 73d Leg., R.S., ch. 1031, 1993 Tex. Gen. Laws 4443 (codified at Tex. Tax Code § 1.111). The Legislature's removal of that requirement demonstrates its intent "to make it easier for parties to reach agreements in the event of a dispute involving taxable property." *Sondock*, 231 S.W.3d at 69. An agreement under Section 1.111(e) contemplates the resolution of a dispute between the appraisal district and the taxpayer occurring at some point during the appraisal process.

We conclude that the parties entered into a valid agreement under Section 1.111(e) to grant the exemption in 2004 and that the agreement prevented the District from removing the exemption.[9] Accordingly, we hold that the trial court properly granted summary judgment in favor of Acme.

## CONCLUSION

Because we find that the parties' agreement prohibited the District from removing the pollution-control exemption, we affirm the trial court's order granting summary judgment in Acme's favor.

---

[9] Acme also contends that the parties entered into similar agreements in 2005, 2006, and 2007 when the District confirmed the application of the pollution-control exception on its notices of appraised value for those years. We need not decide whether those notices constitute agreements under Section 1.111(e) because Acme's entitlement to the exemption in 2004 means that it was not required to apply for the exemption again in subsequent years. *See* Tex. Tax Code § 11.43(c).

14

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   April 11, 2014