In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00412-CV
_____

SIGNAL INTERNATIONAL TEXAS L.P., Appellant

V.

ORANGE COUNTY, TEXAS, ORANGE COUNTY
APPRAISAL DISTRICT AND ORANGE COUNTY
TAX ASSESSOR-COLLECTOR, Appellees

On Appeal from the 163rd District Court
Orange County, Texas
Trial Cause No. B-120281-C

## MEMORANDUM OPINION

This case involves an assessment of ad valorem taxes. Appellant, Signal

International Texas L.P. ("Signal"), appeals the district court's order dated June 18,

2013, dismissing Signal's suit and granting the pleas to the jurisdiction filed by the

defendant-appellees, Orange County Appraisal District ("OCAD"), Orange

County, Texas ("the County"), and the Orange County Tax Assessor-Collector, in her official capacity, ("OCTA") (collectively the "Taxing Entities"). We affirm.

UNDERLYING FACTS

The principal underlying facts are not in dispute. Signal filed its Original Petition on August 15, 2012, seeking relief against the Taxing Entities regarding an assessment amount of $335,838.79 in ad valorem taxes assessed on Signal's personal property located at Signal's facility in Orange County, Texas. Before the tax assessment was levied, Signal's representatives met with the OCAD appraisal agent, Pritchard & Abbott, and Signal submitted its 2011 Tax Year Rendition of its personal property to OCAD on or about March 22, 2011. The Signal Rendition set a total value of $31,729,090.00 for all of Signal's personal property, and it specifically included a barge ("the Atlas Barge") as a Signal asset with a value of $12,854,762.75.

Signal and OCAD later reached an agreement on the value of all of the Signal personal property and on the total ad valorem assessment for the 2011 tax year. Their Settlement Agreement was reduced to writing and signed by all parties on or about May 13, 2011. The Settlement Agreement set Signal's property valuation at $31,729,090.00, and it included the Atlas Barge as one of the items on the inventory of property attached to the agreement.

According to Signal, the Atlas Barge was constructed pursuant to a 2009 Charter Agreement between Signal and Signet Maritime Corporation giving Signet an option to purchase the barge. The barge was completely constructed by Signal as of April of 2010, and on or about May 6, 2010, Signet moved the Atlas Barge from Texas to Pascagoula, Mississippi, without notifying Signal. According to Signal, Signet then moved the barge on May 31, 2010, to Mexico, where it remained for the entirety of 2011.

Signal contends it did not discover that the Atlas Barge left Texas until December of 2011, and Signal alleges that it notified Pritchard & Abbott on January 4, 2012, that Signal made a mistake when Signal rendered the Atlas Barge as part of its personal property for tax year 2011. Signal requested that Pritchard & Abbott request a correction and relief from the 2011 tax assessment in an amount of $335,838.79 (that portion of the 2011 ad valorem tax attributed to the Atlas Barge asset). In February of 2012, Signal sent OCAD a letter about the disputed amount. Pritchard & Abbott later notified Signal that it could not change the agreed-upon settlement amount and that the county tax roll had already been certified, but Pritchard & Abbott agreed to remove the Atlas Barge from the 2012 assessment as long as the barge did not return to Orange County, Texas, during 2012. The County included the tax amount allocated to the Atlas Barge. In March

3

2012, Signal received from OCAD a Notice of Delinquent Taxes, stating that Signal then owed $359,347.51.

In May 2013, Signal filed its First Amended Original Petition seeking what Signal describes in its appellate brief as "equitable relief of rescission or reformation of the Settlement Agreement[,]" as well as "injunctive relief" preventing seizure of the Atlas Barge. The Taxing Entities filed pleas to the jurisdiction, seeking a dismissal for lack of subject matter jurisdiction. On June 18, 2013, the trial court entered an order dismissing Signal's claims against the Taxing Entities with prejudice for lack of subject matter jurisdiction, and Signal filed this appeal.

## ISSUES ON APPEAL

In its first issue, Signal contends that the district court erred in granting the pleas to the jurisdiction and that the trial court had subject matter jurisdiction over Signal's equitable claim because Signal has no recourse under the Texas Tax Code to correct the error and "mutual mistake" made by the parties. In issue two, Signal argues that it was not required to exhaust administrative remedies because the statutory provisions in the Tax Code do not govern Signal's equitable claim. In issue three, Signal contends the trial court erred in dismissing Signal's claims with prejudice and denying Signal an opportunity to replead to cure the jurisdictional

4

defects. The Taxing Entities argue that the trial court correctly dismissed the claims because (1) the Texas Tax Code provides the exclusive remedy for a property owner to protest the assessment of property for ad valorem taxes; (2) Signal failed to exhaust its administrative remedies; (3) Signal cannot collaterally attack the taxable situs of the Atlas Barge by seeking "equitable relief[;]" and (4) Signal entered into a final and binding property settlement agreement in accordance with section 1.111(e) of the Texas Tax Code, thereby waiving any rights of protest under the provisions of the Texas Tax Code.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction over the claims that a plaintiff has asserted in the lawsuit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review the trial court's order on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). In our de novo review, we do not weigh the merits of the plaintiff's claims, but we consider the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The plaintiff bears the burden in a lawsuit to allege facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446

5

(Tex. 1993). "[W]e construe the pleadings in the plaintiff's favor and look to the pleader's intent." *Brown*, 80 S.W.3d at 555. If the plea to the jurisdiction challenges the existence of jurisdictional facts, we will consider only the evidence relevant to the resolution of the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227.

DISCUSSION

The Tax Code establishes a detailed set of procedures that property owners must abide by to contest the imposition of property taxes. *See* Tex. Tax Code Ann. §§ 41.01-43.04 (West 2008 & Supp. 2014). As a general rule, "'a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes.'" *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam) (quoting *Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex. 2005)); *Kellair Aviation Co. v. Travis Cent. Appraisal Dist.*, 99 S.W.3d 704, 709 (Tex. App.—Austin 2003, pet. denied) ("[E]ven constitutional entitlement can be waived when a party fails to follow the implementing legislation.") (citing *Aramco Associated Co. v. Harris Cnty. Appraisal Dist.*, 33 S.W.3d 361, 364 (Tex. App.—Texarkana 2000, pet. denied)). A trial court's

6

subject matter jurisdiction may not be waived and may be raised for the first time on appeal. *See Tex. Ass'n of Bus.*, 852 S.W.3d at 445.

Chapter 41 of the Texas Tax Code expressly provides that a property owner may file an administrative protest of certain actions, including "unequal appraisal of the owner's property[,]" "inclusion of the owner's property on the appraisal records[,]" and "any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner." *See* Tex. Tax Code Ann. § 41.41(a)(2), (3), (9) (West 2008). Chapter 42 then allows the property owner to seek judicial review of an adverse determination of an administrative protest. *See id.* § 42.01(a)(1)(A) (West Supp. 2014). More specifically, a taxpayer may protest the taxable situs of property pursuant to section 41.42 of the Texas Tax Code by utilizing the procedures of chapters 41, 42, or section 25.25 of the Tax Code. *See id.* § 41.42 (West 2008).

To prevail on a protest of taxable situs, the property owner must establish that the property is on the appraisal roll of another district or is not taxable in the state. *Id*. After a hearing before the appraisal review board, the taxpayer or taxing unit may appeal to the district court for a de novo review of the board's determination. *See id.* at §§ 42.21, 42.23. This is the exclusive method provided by the Tax Code for adjudicating a protest of situs. *Sierra Stage Coaches, Inc. v. State*

7

*of Texas—Cnty. of Harris*, 832 S.W.2d 191, 193 (Tex. App.—Houston [14th Dist.] 1992, no writ). However, if the taxpayer enters into a section 1.111(e) agreement, the district court is deprived of jurisdiction over an appeal under section 42.01. *See Curry v. Harris Cnty. Appraisal Dist.*, 434 S.W.3d 815, 822 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The Taxing Entities argue the parties entered into a section 1.111(e) settlement agreement and the agreement is final and binding on the parties. *See* Tex. Tax Code Ann. § 1.111(e) (West Supp. 2014). We first address a footnote in Signal's reply brief wherein Signal states it "does not concede" that the Settlement Agreement was pursuant to section 1.111(e). Section 1.111(e) of the Texas Tax Code provides the following:

> An agreement between a property owner or the owner's agent and the chief appraiser is final if the agreement relates to a matter:
> > (1) which may be protested to the appraisal review board or on which a protest has been filed but not determined by the board; or
> > (2) which may be corrected under Section 25.25 or on which a motion for correction under that section has been filed but not determined by the board.

*Id.* The written agreement, signed by Signal's agent and a representative of the appraisal district, states that the parties "agreed to the settled value for the 2011 tax year in the amount of $31,729,090[.]" The agreement further states:

8

I acknowledge that the subject matter of property described above has been settled to my satisfaction. I hereby waive my right to any further proceeding in this matter, any claim for exemptions other than those already granted for the tax year, or any other actions under Chapter 41 or Chapter 25 of the Property Tax Code.

An agreement is a section 1.111(e) agreement when the agreement is between the property owner or the owner's agent and the chief appraiser, and the agreement concerns a matter that could have been protested to the appraisal review board or on which a protest has been filed but not determined by the board. Tex. Tax Code Ann. § 1.111(e); *see, e.g., Bastrop Cent. Appraisal Dist. v. Acme Brick Co.*, 428 S.W.3d 911, 916-17 (Tex. App.—Austin 2014, no pet.); *Hartman v. Harris Cnty. Appraisal Dist.*, 251 S.W.3d 595, 599 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Sondock v. Harris Cnty. Appraisal Dist.*, 231 S.W.3d 65, 69 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Upon review of the Settlement Agreement in the case at bar, we conclude that the agreement is a section 1.111(e) agreement because it concerns a matter that could have been protested to the appraisal review board. *See* Tex. Tax Code Ann. § 1.111(e); *see also id.* §§ 41.01(a)(1) (providing for appraisal review boards to determine property owners' protests), 41.41(a)(1) (allowing for owner's protest of a property's appraised value), 41.42 (allowing for owner to protest the taxable situs of property). Section 1.111(e) agreements are final, even without approval or

9

adoption by the appraisal board. *See BPAC Tex., LP v. Harris Cnty. Appraisal Dist.*, No. 01-03-01238-CV, 2004 Tex. App. LEXIS 9592, at *7 (Tex. App.—Houston [1st Dist.] Oct. 28, 2004, no pet.) (mem. op.). Section 42.09(a)(2) provides, in relevant part, that:

> procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are exclusive, and a property owner may not raise any of those grounds . . . as a basis of a claim for relief in a suit by the property owner to . . . obtain a refund of taxes paid.

Tex. Tax Code Ann. § 42.09(a)(2) (West Supp. 2014). Signal contends that the equitable claims of contract rescission, reformation, and mutual mistake are inapplicable to a section 1.111(e) agreement.

Signal relies on *In re Willacy County Appraisal District*, Cause No. 13-13-00550-CV, 2013 Tex. App. LEXIS 13593 (Tex. App.—Corpus Christi Nov. 1, 2013) (orig. proceeding), in arguing that, even assuming the Settlement Agreement was executed pursuant to section 1.111(e), contract law can be applied to reform or rescind a section 1.111(e) agreement. *In re Willacy County Appraisal District* is inapposite.

*In re Willacy County Appraisal District* involved a discovery dispute arising out of a property tax case. 2013 Tex. App. LEXIS 13593, at *1. The taxpayer, through its agent, filed a motion to correct ownership of certain inventory for the 2009 tax year pursuant to section 25.25(c) of the Tax Code. After the filing of the

10

motion to correct, the taxpayer and the appraisal district's chief appraiser reached an agreement on the motion that the appraisal district would make the changes requested in the motion and no hearing by the appraisal review board would be necessary. *Id*. at *2. The appraisal district reduced the appraised value as agreed and issued the taxpayer a refund of overpaid taxes. *Id.* In September 2011, the chief appraiser notified the taxpayer that the appraisal district changed the ownership of the same property to reflect that it was owned by the taxpayer as of September 1, 2009, pursuant to section 25.25(b) of the Texas Tax Code. *Id*. The notice provided that the taxpayer had a right to protest the chief appraiser's action to the appraisal review board. *Id.* at **2-3. The taxpayer protested on the grounds that the appraisal district was legally prohibited from changing the ownership under section 25.25(b). *Id*. The appraisal review board denied the taxpayer's protest, and the taxpayer appealed to the trial court and argued that the 2010 agreement was final and could not be reviewed or rejected by appraisal review boards. *Id.* at *3.

The appraisal district filed an answer and denial, asserting that its actions were authorized under the Tax Code, and asserting an affirmative defense of fraud or misrepresentation regarding the taxpayer's motion to correct ownership. *Id.* at *4. The appraisal district propounded discovery to the taxpayer, and the taxpayer

11

objected and did not respond. *Id.* The appraisal district filed a motion to compel the written discovery and sent a notice of intent to take a deposition of a representative of the taxpayer. *Id.* The taxpayer filed a motion to quash the deposition. *Id.* After a hearing, the trial court denied the appraisal district's motion to compel and granted the taxpayer's motion to quash, which resulted in the original proceeding wherein the appraisal district contended that the trial court abused its discretion in denying the appraisal district's motion to compel and in granting the taxpayer's motion to quash. *Id.* at **4-5. In conditionally granting the appraisal district's petition for writ of mandamus, the court concluded that the defense of fraud "in this case is viable[,]" that the trial court abused its discretion by denying the appraisal district's requested discovery to develop its affirmative defense, and that the appraisal district had no adequate remedy on appeal. *See id.* at **11-12.

We disagree with Signal's assertions that *Willacy* "is directly on point to the matter at hand." *Willacy* involved allegations of fraud and not "mutual mistake." Furthermore, the Corpus Christi Court of Appeals in *Willacy* limited its review of the case to the issue of whether the appraisal district met its burden to establish its entitlement to mandamus relief. 2013 Tex. App. LEXIS 13593, at *9. To the extent Signal argues that *Willacy* confirms that the court has jurisdiction to apply common law contract defenses to section 1.111(e) agreements, we note that the

12

Court in *Willacy* explicitly stated, "We are not directed to, nor do we find any authority, that expresses an opinion on whether the defense of fraud may be used in the context of the present controversy under the tax code." *Id.* at *10. The Court again explained that "[a]t this stage of the proceedings, we again express no opinion—as the parties implicitly invite us to do—regarding the merits, ultimate success, or applicability of such an affirmative defense" because those "considerations relate to the factual and procedural postures of the case" and not to whether the appraisal district met its burden to establish its entitlement to mandamus relief. *Id.* at **9-11.

Signal also contends *Dallas Central Appraisal District v. 1420 Viceroy Limited Partnership*, 180 S.W.3d 267 (Tex. App.—Dallas 2005, no pet.), supports Signal's position that (1) principles of contract law are applicable to the Settlement Agreement here, and (2) Signal has no remedy under the Tax Code and therefore "cannot be faulted for its alleged failure to exhaust remedies which do not exist." In *Dallas Central Appraisal District*, 1420 Viceroy Limited Partnership ("Viceroy") filed suit against Dallas Central Appraisal District ("DCAD") seeking to recover a refund of penalties, fees, and interest allegedly imposed on its property without proper notice and in violation of due process of law. *Id.* at 268. Viceroy alleged it did not receive notice that taxes, penalties, fees, and interest were owed

13

on the property until August 2003, and it requested a waiver of penalties, fees, and interest pursuant to section 33.011 of the Tax Code, which was denied. *Id.* Viceroy filed a notice of protest with the appraisal board challenging the valuation of its property and requesting a refund of penalties, fees, and interest because the tax office never sent it proper notice of the charges. *Id.* After a hearing, the review board issued an order denying any relief to Viceroy. *Id.* Viceroy filed suit in district court, and the appraisal district filed a plea to the jurisdiction. *Id.* The trial court denied the plea to the jurisdiction and the appraisal district appealed. In affirming the trial court's judgment, the Dallas Court of Appeals held that the exclusivity provision in section 42.09 was not applicable and did not preclude the trial court from exercising subject matter jurisdiction because "[t]he basis of Viceroy's complaint in the trial court . . . is not a ground of protest contained in the property tax code." *Id.* at 270-71.

We conclude that *Viceroy* is distinguishable from the present case because *Viceroy* did not involve a section 1.111(e) agreement and Signal's basis of its suit, the taxable situs of the Atlas Barge, is a ground of protest specified in the Tax Code. Signal argues that the basis of its suit is "its request for the equitable remedies" which "is not a 'ground of protest' specified by the Code" for which there are remedies and, therefore, section 42.09(a)(2) does not apply to its suit.

14

According to Signal, the Tax Code does not address or prohibit Signal's "right to seek equitable relief concerning extrinsic matters *which merely relate to* the Tax Code." We disagree with Signal that its claims "concern[] extrinsic matters which merely relate to" the Tax Code. Signal's equitable suit is an attempt to protest the taxable situs of the Atlas Barge outside of Texas's designated statutory procedure, and therefore, the suit is prohibited by section 42.09(a)(2). The situs of property is an issue on which a property owner must first exhaust its administrative remedies before asserting the issue in a lawsuit. *See* Tex. Tax Code Ann. §§ 41.42, 42.09; *Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 124-25 (Tex. 1991). The exclusive remedies and procedures in the Tax Code can be waived when the parties enter into a section 1.111(e) settlement agreement. *See* Tex. Tax Code Ann. § 1.111(e). Signal waived its right to protest under the Tax Code and waived all administrative remedies when it entered into the property settlement agreement. *See id.*; § 42.09(a)(2). Furthermore, because Signal chose to reach an agreement with OCAD as to the appraised value of its property instead of pursuing a protest, Signal was not deprived of its due process of law. *See Hartman*, 251 S.W.3d at 601; *Sondock*, 231 S.W.3d at 70; *BPAC*, 2004 Tex. App. LEXIS 9592, at **9-10. Therefore, we conclude that the trial court did not err in granting the Taxing Entities' pleas to the jurisdiction and did not err in ruling that Signal

15

was required to exhaust administrative remedies under the Tax Code prior to seeking judicial relief. Issues one and two are overruled.

In light of our conclusions that the Settlement Agreement is a final resolution to Signal's right to protest the taxable situs of the Atlas Barge and that Signal has no equitable claim to rescind the Settlement Agreement, Signal's pleadings failed to plead facts that establish jurisdiction and affirmatively demonstrate an incurable defect. The district court did not err in dismissing Signal's cause of action with prejudice. Issue three is overruled. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on August 11, 2014
Opinion Delivered December 18, 2014

Before McKeithen, C.J., Horton and Johnson, JJ.