

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00264-CV

---

WILBARGER COUNTY APPRAISAL DISTRICT AND WILBARGER COUNTY
APPRAISAL REVIEW BOARD, APPELLANTS

V.

ONCOR ELECTRIC DELIVERY COMPANY NTU, LLC, APPELLEE

---

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 29118, Honorable Dan Mike Bird, Presiding

---

October 25, 2022

## OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellants, Wilbarger County Appraisal District ("Wilbarger CAD") and Wilbarger Appraisal Review Board ("Wilbarger ARB"), appeal the trial court's order denying their plea to the jurisdiction and motion for summary judgment. We reverse the trial court's order and render judgment granting Appellants' plea to the jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit is a challenge to the appraisal roll value for property of appellee, Oncor Electric Delivery Company NTU LLC, contained within Wilbarger County in tax year 2019. Since analysis of the issues presented by Appellants will require substantial identification of relevant facts, we will limit our presentation of the background here to the procedural history that led to this appeal.

In June of 2019, an agent for Oncor's predecessor-in-interest, Sharyland Utilities LP, entered into a "Settlement and Waiver of Protest" with the appraiser for Wilbarger CAD in which the parties agreed that the market value of "transmission lines" in Wilbarger County was $55,068,090 for tax year 2019. Despite this agreement, in February of 2020, Oncor filed a motion for correction of appraisal roll claiming that a clerical error and consideration of property that is not in Wilbarger County affected Oncor's tax liability for tax year 2019. The Wilbarger ARB heard Oncor's claims and denied them both. Oncor then filed suit for judicial review against Appellants. Appellants filed a plea to the jurisdiction and motion for summary judgment[1] contending that the 2019 agreement between Sharyland and Wilbarger CAD was final and binding and that Appellants are immune from Oncor's claim under the Uniform Declaratory Judgments Act. After holding a hearing on Appellants' motions, the trial court denied both. Appellants timely filed notice of interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

---

[1] Appellants' motion for summary judgment challenges the trial court's jurisdiction over Oncor's declaratory judgment claim as well as reasserting challenges contained in their plea to the jurisdiction which assert that Oncor's claims under section 25.25 are prohibited due to their agreement under section 1.111(e). Consequently, our rendition of judgment in favor of Appellants renders their challenges asserted in their motion for summary judgment moot.

**STANDARD OF REVIEW**

Subject matter jurisdiction is essential to a court's power to decide a case and may be challenged by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). A ruling on a plea to the jurisdiction is reviewed de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A trial court may consider evidence when deciding a plea to the jurisdiction and must do so when consideration of evidence is necessary to resolve the jurisdictional issue. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction and the fact issue will be decided by the factfinder. *Miranda*, 133 S.W.3d at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court will rule on the plea as a matter of law. *Id.* at 228.

**EFFECT OF PROPERTY CODE SECTION 1.111(e) AGREEMENT**

By their first issue, Appellants contend that Oncor cannot be granted a change in the appraised value of its property under Texas Tax Code section 25.25 following entry of a binding and final agreement with the tax appraiser under Tax Code section 1.111(e).

Oncor sued to correct the appraisal roll under Texas Tax Code Chapters 25 and 42. These sections authorize a property owner, after receiving an appraisal review board's determination of a motion to correct an appraisal-roll error, to bring suit in district court to compel the board to change the appraisal roll. *See* TEX. TAX CODE ANN. §§ 25.25(g), 42.01(a)(1)(B).[2] These provisions vest the district court with jurisdiction to

---

[2] Further references to provisions of the Texas Tax Code will be by reference to "section _" or "§ _."

decide the viability of Oncor's claims under section 25.25. However, an agreement between a property owner and the chief appraiser is final when the agreement relates to a matter which may be corrected under section 25.25 or on which a motion for correction under that section was filed but not determined by the board. *Id.* § 1.111(e)(2). Because section 1.111 agreements are final, they are not subject to protest by a property owner or statutory suit for judicial review. *Bastrop Cent. Appraisal Dist. v. Acme Brick Co.*, 428 S.W.3d 911, 917 (Tex. App.—Austin 2014, no pet.); *MHCB (USA) Leasing & Fin. Corp. v. Galveston Cent. Appraisal Dist.*, 249 S.W.3d 68, 84 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). By its express terms, a section 1.111 agreement that relates to a matter which may be corrected under section 25.25 precludes correction under section 25.25. TEX. TAX CODE ANN. § 1.111(e)(2).

In the present case, Oncor's predecessor, Sharyland Utilities LP, entered into an agreement with the appraiser for Wilbarger CAD regarding the market value of "transmission line(s)" owned by Sharyland for tax year 2019. In the agreement, Sharyland stated, "I hereby withdraw my protest and waive any further proceeding in this matter." Neither party disputes that this agreement was a section 1.111(e) agreement. In January of 2020, Oncor filed a motion under section 25.25 seeking to correct a "clerical error" relating to the length of transmission lines contained in Wilbarger County. The Wilbarger ARB denied the motion. After Oncor sought judicial review, Appellants filed a plea to the jurisdiction and motion for summary judgment in which they argued that Oncor's motion is precluded by its predecessor-in-interest's section 1.111 agreement, which were denied by the trial court.

4

The section 1.111 agreement regarding the value of Sharyland's property for tax year 2019 "resolv[es] the dispute" regarding valuation of Oncor's electric transmission lines. *Houston Cement Co. v. Harris Cnty. Appraisal Dist.*, No. 14-12-00491-CV, 2013 Tex. App. LEXIS 7635, at *2 (Tex. App.—Houston [14th Dist.] June 25, 2013, no pet.) (mem. op.). The agreement identifies that the total value of transmission lines in Wilbarger County for 2019 is $55,068,090. This agreement "clearly expresse[s] harmony of opinion as to the final values of [Sharyland's transmission lines] in the signed, specifically written agreement." *Id.* at *6. Because the value of Sharyland's transmission lines was a matter on which protests could have been filed, the agreement is final as to those values. TEX. TAX CODE ANN. § 1.111(e)(1); *Houston Cement Co.*, 2013 Tex. App. LEXIS 7635, at *6. The finality of this agreement prohibits Oncor from pursuing judicial review of the valuation of its transmission lines in Wilbarger County. *See Houston Cement Co.*, 2013 Tex. App. LEXIS 7635, at *5 (quoting *MHCB (USA) Leasing*, 249 S.W.3d at 84, for proposition that section 1.111(e) agreements are "final and not subject to protest by the property owner or subject to a property owner's statutory suit for judicial review under chapter 42"); *see also Acme Brick Co.*, 428 S.W.3d at 917 (same).

Oncor contends that the 2019 agreement does not preclude an appraisal review board or court from correcting a clerical error affecting the appraisal roll's indication of the value of its property. Oncor's argument is that the 2019 agreement contains a clerical error because it included miles of transmission lines that were not actually located in Wilbarger County. This argument is similar to one advanced in *Houston Cement.* There, the taxpayer and the Harris County Appraisal District reached section 1.111 agreements regarding the appraised value of taxpayer property for the 2009 and 2010 tax years.

5

*Houston Cement Co.*, 2013 Tex. App. LEXIS 7635, at *2.  Both agreements contained itemized descriptions of the initial and final appraised values of several types of property, including inventory.  *Id.*  In January 2011, the taxpayer filed a motion to correct the appraisal roll under section 25.25(c) arguing that, due to clerical errors, both valuations included inventory that had been in transit in 2009 and 2010 and had not yet arrived in Harris County by the beginning of the respective tax years.  *Id.*  Following the Appraisal Review Board's dismissal of the motion for lack of jurisdiction, the taxpayer sought judicial review in district court.  *Id.* at *2–3.  In rejecting the taxpayer's argument that the trial court had jurisdiction, the appellate court explained that,

> [The taxpayer] and [Harris County Appraisal District] clearly expressed harmony of opinion as to the final values of [the taxpayer's] combined business personal property and of its inventory in the signed, specifically written agreements.  Because those final values were matters on which protests either could have been filed or had been filed but not yet determined by the board, the agreements are final as to those values.  *See* TEX. TAX CODE ANN. § 1.111(e)(1).

> Therefore, [Harris County Appraisal District's] plea to the jurisdiction did not rest on an overly broad interpretation of section 1.111(e) that disregarded its subsections.  In fact, because the value of inventory was a specific matter to which the agreements related, the agreements precluded [the taxpayer's] lawsuit even under [the taxpayer's] construction of the statute.

*Id.* at *6–7.

Oncor attempts to distinguish *Houston Cement* due to those agreements being specific in their identification of the taxpayer's property, including inventory.  Even though the agreements in *Houston Cement* specifically identified the property upon which the valuation was based and the taxpayer was able to establish that some of that property was not located in Harris County during the 2009 and 2010 tax years, the reviewing court still concluded that the taxpayer's suit was barred "because the *value of inventory* was a

6

specific matter to which the agreements related . . . ."  *Id.* at *7 (emphasis added). Similarly, in the present case, the 2019 agreement between Sharyland and Wilbarger CAD specifically indicates that it is valuing "transmission line(s)."  We see no difference in the agreements in the *Houston Cement* case, where the value of inventory was specified in the agreements but the agreements did not accurately reflect the value of actual inventory on hand, and the agreement in the present case, where the value of "transmission line(s)" was specified in the agreement but the agreement did not accurately reflect the actual value of the transmission lines present.

Likewise, in *Acme Brick*, a section 1.111 agreement was held binding on the appraisal district even though the district would have been able to rescind its decision in the absence of the agreement.  In *Acme Brick*, the taxpayer and district reached an agreement that the taxpayer's property qualified for a pollution-control exemption.  *Acme Brick Co.*, 428 S.W.3d at 914.  However, the district subsequently removed the exemption on the basis that it did not have the required exemption application in its records.  *Id.*  The taxpayer filed a protest with the appraisal review board, which denied the protest.  *Id.*  The taxpayer then filed suit in district court.  *Id.* at 914–15.  The trial court granted summary judgment in favor of the taxpayer.  *Id.* at 915.  On appeal, the reviewing court identified that, "[t]he document signed by [the district's agent] and [the taxpayer] specifically states that the property values (including the application of the exemption) have been agreed upon . . . ."  *Id.* at 916 (parenthetical in original).  The court ultimately held "that section 1.111(e)'s directive that 'an agreement between a property owner or the owner's agent and the chief appraiser is final' means that the appraisal district may not take subsequent action that is contrary to that agreement, even in situations in which the Property Tax

7

Code would otherwise allow it to reconsider a previous decision." *Id.* at 918. Thus, like in *Houston Cement*, an agreement regarding the value of property cannot be challenged on the basis that information extraneous to the agreement alters that value.

We conclude that the section 1.111 agreement between Sharyland and Wilbarger CAD made final the value of transmission lines contained within Wilbarger County in tax year 2019. Like in *Houston Cement*, the subsequent discovery that the agreed valuation was based on erroneous information does not negate the finality of the agreement or render it subject to challenge. *Houston Cement Co.*, 2013 Tex. App. LEXIS 7635, at *7.

Oncor further argues that section 25.25 allows it to correct clerical errors or for the improper inclusion of property in the appraisal roll valuations even if there is an agreement regarding the value of the property. Section 25.25 of the Tax Code allows for changes to the appraisal roll for clerical errors that affect a taxpayer's tax liability (section 25.25(c)(1)) or to correct for the inclusion of property that does not exist in the form or at the location described in the appraisal roll (section 25.25(c)(3)). In a separate subsection (section 25.25(d)), "incorrect appraised value" can be challenged. Oncor points out that a challenge to an incorrect appraised value is precluded if the value of the property was established as a result of a written agreement between the property owner and the appraisal district. § 25.25(d-1)(2). There is not, however, such an express articulation that an agreement precludes a challenge to clerical errors or incorrect inclusion of property. As a result, Oncor contends that the legislature intended to allow for correction of objective errors, even after the entry of a section 1.111 agreement. The problem with this argument is that the legislature has expressly stated otherwise. The legislature has provided that, "An agreement between a property owner . . . and the chief appraiser is

8

final if the agreement relates to a matter which may be corrected under [s]ection 25.25 or on which a motion for correction under that section has been filed but not determined by the board." § 1.111(e)(2). This provision clearly expresses that an agreement on any matter which may be corrected under section 25.25 is final. Had the legislature intended an agreement under section 1.111 to only preclude challenges asserted under section 25.25(d), it could have easily so specified. We cannot interpret the absence of language in a statute in a manner contrary to express language contained elsewhere in the code.

Oncor argues, in the alternative, that the 2019 agreement is voidable because it was based on mutual mistake. However, even the cases cited by Oncor establish that the only ground for setting aside an agreement on valuation is fraud. *See Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 51–52 (Tex. 2018) ("Accordingly, we hold that when, as here, the Legislature has made an agreement between a taxpayer and an appraisal district's administrative official final, the validity of such an agreement may be subject to attack on the basis of fraud, even if the agreement is not otherwise subject to review or rejection."); *Acme Brick Co.*, 428 S.W.3d at 918 n.6 (acknowledging that an agreement's validity might be subject to challenge in some situations, such as fraud). Oncor's claim that a section 1.111 agreement can be set aside when it was based on a mutual mistake of fact has been expressly rejected. *See Valerus Field Sols., LP v. Matagorda Cnty. Appraisal Dist.*, No. 13-17-00520-CV, 2018 Tex. App. LEXIS 8279, at *10–11 (Tex. App.—Corpus Christi–Edinburg Oct. 11, 2018, no pet.) (mem. op.) (rejecting argument that mistake, like fraud, should allow for alteration of section 1.111 agreement); *Signal Int'l Tex. L.P. v. Orange Cnty.*, No. 09-13-00412-CV, 2014 Tex. App. LEXIS 13543, at *12, 16 (Tex. App.—Beaumont Dec. 18, 2014, pet.

9

denied) (mem. op.) (declining to apply doctrine of mutual mistake to section 1.111 agreement).

We sustain Appellants' first issue.

### UNIFORM DECLARATORY JUDGMENTS ACT CLAIM

Appellants' second issue contends that Oncor cannot bypass the pervasive regulatory scheme of the Texas Tax Code by asserting its claim under the Uniform Declaratory Judgments Act (UDJA). In response, Oncor clarifies that its UDJA claim seeks to have the district court determine the scope, validity, and effect of the 2019 agreement under the Texas Tax Code.

Assuming, without deciding, that Oncor can maintain suit under the UDJA against Appellants, our analysis above necessarily addresses the scope, validity, and effect of the 2019 agreement under the Texas Tax Code. Consequently, we conclude that Appellants' second issue is moot.

### WILBARGER ARB AS A PROPER PARTY

By their third issue, Appellants contend that Wilbarger ARB is not a proper party to this lawsuit. Appellants base their argument on section 42.21(b), which provides that, "A petition for review may not be brought against the appraisal review board." § 42.21(b). Oncor cites section 25.25(g) as providing that, after certain conditions are met, a party "may file suit to compel the board to order a change in the appraisal roll . . . ." § 25.25(g).

While these provisions seem to be in conflict, our decision that Oncor could not bring suit to alter the appraisal roll regarding the value of its transmission lines means that we need not resolve this conflict. Having determined that Oncor could not bring its current suit against Appellants, we conclude that Appellants' third issue is moot.

## CONCLUSION

Concluding that the 2019 agreement precludes Oncor's suit for judicial review, we reverse the trial court's order and render judgment granting Appellants' plea to the jurisdiction.

Judy C. Parker
Justice